UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| KIM SMITH,<br><br>               Plaintiff,<br><br>      vs.<br><br>STELLAR RESTORATION SERVICES,<br>LLC,<br><br>               Defendant. | CIV. 20-5081-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant filed a motion to dismiss plaintiff's complaint on the basis of the first-filed rule or, in the alternative, based on the doctrine of *forum non conveniens*.   (Docket 4).   Plaintiff resists defendant's motion.   (Docket 10). For the reasons stated below, defendant's motion is denied.

**SUMMARY OF FACTS**

Most of the facts are not disputed and will be summarized from both parties' filings, without consideration of the parties' assertions of opinions or legal conclusions.   Plaintiff Kim Smith is a resident of Rapid City, South Dakota. (Dockets 1-1 ¶ 1 & 6-2 ¶ III).   Defendant Stellar Restoration Services, LLC, ("Stellar Restoration") is a Texas limited liability company having its principal place of business in Texas.   (Dockets 1-1 ¶ 2 & 6-2 ¶ II).

Plaintiff is the sole member and owner of Ten Below, LLC, ("Ten Below") a South Dakota limited liability company, having a principal place of business in

Rapid City, South Dakota.   (Docket 1-1 ¶ 3).   Ten Below is the owner of the real property and improvements located at 4711 South I 90 Service Road, Rapid City, South Dakota ("Structure").   Id. ¶ 4.   The Structure located at this site houses two businesses owned by plaintiff.   Id.   The other business owned at the location by Mr. Smith is I-90 Cold Storage Company ("Cold Storage").   (Docket 6-2 ¶ IV & 11-1 ¶ 3).

On June 4, 2020, the Structure suffered hail damage.   (Docket 1-1 ¶ 5).  On June 5, 2020, Trent Jebbens, a representative of Stellar Restoration, went to the Structure to solicit hiring Stellar Restoration to perform the hail repair for the Structure's roof.   Id. ¶ 6.   Prior to that date, Mr. Smith never met Mr. Jebbens or did any business with Stellar Restoration.   Id.   ¶ 7.

On June 9, 2020, Mr. Jebbens returned with a Restoration Services Agreement ("Agreement").   Id. ¶ 8 & Docket 6-2 ¶ VII.   On that date, Mr. Jebbens signed the Agreement on behalf of Stellar Restoration and Mr. Smith signed it on behalf of Cold Storage.   Id.   The introductory paragraph at the top of page one of the Agreement remained blank until July 9, 2020, when Mr. Jebbens entered the information to the paragraph in the presence of Mr. Smith. (Docket 1-1 ¶ 9 & 11-1 ¶ 7).

At some point Stellar Restoration worked with Mr. Smith to provide his insurance carrier and adjusters with evidence of the damage to the roof to assist in determining the extent of the damages and the costs of repairs.   (Docket

2

6-2 ¶ X).   Plaintiff's insurance carrier issued a statement of loss for the replacement of the Structure's roof and related damages from the storm.   Id. Mr. Smith later received payment from the insurance carrier and Stellar Restoration was provided a copy of the approved estimate of repairs.   Id.

On July 23,2020, Mr. Smith notified Stellar Restoration that he intended to hold off on having repair work done to the Structure.   (Dockets 1-1 ¶ 10, 6-2 ¶ X & 11-1 ¶ 8).   On August 4, 2020, Mr. Jebbens returned to the Structure and informed Mr. Smith he had one week to authorize the commencement of repair work or the matter would be turned over to "legal."   (Docket 1-1 ¶ 11 & 11-1 ¶ 9). On August 7, 2020, Mr. Smith e-mailed Stellar Restoration that the Agreement was terminated.   (Dockets 1-1 ¶ 12, 6-2 ¶ X & 11-1 ¶ 10).

On September 8, 2020, Mr. Smith received a letter dated August 31, 2020, from Attorney Israel Suster representing Stellar Restoration.   (Docket 11-1 at pp. 4-5).   The letter indicated unless Mr. Smith tendered "forty-five percent . . . of the Agreed Amount of the Agreement," that is, "$109,743.75," by "5:00 p.m., Tuesday, September 8, 2020," the attorney would "advise [Stellar Restoration] to file suit . . . for damages."   Id. at p. 5 (bold omitted); see also Dockets 1-1 ¶ 14 & 11-1 ¶ 13.

On September 10, 2020, Attorney Jon LaFleur on behalf of Mr. Smith e-mailed a letter to Attorney Suster.   (Dockets 1-1 ¶ 15, 10 at pp. 3-4 & 11-2). Among other things, Attorney LaFleur's letter indicated if Stellar Restoration did

3

not withdraw its claims within 10 days "Mr. Smith will be left with no alternative than to seek the legal recourse available to him[.]"   (Docket 11-2).

## PROCEDURAL HISTORY

On September 11, 2020, Stellar Restoration filed a lawsuit against Mr. Smith in District Court, 429th Judicial District, Collin County, Texas, case No. 429-04465-2020 ("Texas state court").   (Dockets 1-1 ¶ 16, 6 ¶ 4, 6-2 & 11-1 ¶ 14).   Stellar Restoration's Original Petition ("Petition") alleges two causes of action: breach of contract and injunctive relief and seeks attorneys' fees. (Docket 6-2 at pp. 6-9 & 10).   Mr. Smith received his copy of the Petition on September 17, 2020.   (Docket 11-1 ¶ 14).   On October 1, 2020, Mr. Smith's Texas attorney filed an answer ("Answer) to the Petition.   (Docket 6-3).

On December 8, 2020, Attorney LaFleur filed a summons and complaint ("Complaint") on behalf of Mr. Smith against Stellar Restoration in Circuit Court, Seventh Judicial Circuit, Pennington County, South Dakota.   (Docket 1-1 at pp. 1-4).   The Complaint alleges a single count of a violation of the South Dakota deceptive trade practices act and seeks compensatory and general damages, punitive damages and attorney's fees.   Id. at pp. 2-3.   The Complaint was served on the South Dakota Registered Agent for Stellar Restoration on December 14, 2020.   Id. at p. 5.   On December 30, 2020, attorneys for Stellar Restoration filed a notice of removal ("Removal") from Seventh Circuit Court to the Western Division of the United States District Court for the District of South Dakota.   (Dockets 1 & 1-2).

4

## STELLAR RESTORATION'S MOTION

On January 4, 2021, Stellar Restoration filed a motion to dismiss the Complaint and this federal action based on the first-filed rule or, in the alternative, based on the doctrine of *forum non conveniens*.   (Docket 4).   Stellar Restoration asserts it filed suit in Texas state court as that was "the agreed upon venue as stated in the Agreement's forum selection clause."   (Docket 5 at p. 4) (referencing Docket 6-1 ¶ 8).   Stellar Restoration contends Mr. Smith's Complaint depends "upon the same set of facts and circumstances as the Texas Action. . . . [And] appears to be a direct answer or counterclaim to the Texas Action."   Id.

1.     THE FIRST-FILED RULE

Since the Petition was filed in Texas three months prior to Mr. Smith's South Dakota Complaint, Stellar Restoration argues "[t]he first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction."   Id. at pp. 4-5 (citing Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993); other references omitted).

Stellar Restoration contends "[t]he first-filed rule applies both between two federal courts and between a federal court and a state court. . . . For the first-filed rule to apply, the two cases do not need to be identical as long as the two actions substantially overlap."   Id. at p. 5 (internal references omitted).   Stellar Restoration argues the only " 'compelling circumstances' justifying a departure

from the first-filed rule" are "(1) the 'first' suit was filed after the other party gave notice of its intention to sue; and (2) the first action was for declaratory judgment rather than for damages or equitable relief."   Id. at p. 6 (referencing Nw. Airlines, Inc., 989 F.2d at 1006).   Stellar Restoration asserts Mr. Smith filed his Answer in the Texas action and "rather than filing a counterclaim to that suit . . . filed his Complaint with this Court months later, involving the same parties and stemming from the same set of facts."   Id. at p. 6.   For this reason, Stellar Restoration argues Mr. Smith cannot meet his high burden of proof to avoid the first-filed rule "because neither 'compelling circumstance' is present in this case."   Id. at p. 7.   Contending the first-filed rule applies, Stellar Restoration moves for dismissal of Mr. Smith's Complaint without prejudice.   Id. at p. 8.

2.    DOCTRINE OF *FORUM NON CONVENIENS*

As an alternative to the first-filed motion, Stellar Restoration asks this court to enforce the forum selection clause in the Agreement and dismiss Mr. Smith's Complaint using the doctrine of *forum non conveniens*.   Id.   Stellar Restoration argues "the appropriate method to enforce the forum selection clause is dismissal of Plaintiff's Complaint without prejudice by invoking the doctrine of *forum non conveniens.*"   Id. (referencing Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas, 571 U.S. 49, 63 (2013); other references omitted).

"In applying the doctrine of *forum non conveniens*," Stellar Restoration suggests Mr. Smith, "the party defying the forum-selection clause . . . bears the

burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Id. at p. 9 (referencing Omega Liner Co., Inc. v. Monte Vista Group, LLC, CIV. 18-4105, 2019 WL 4415378, at *3 (D.S.D. Sept. 16, 2019)). Stellar Restoration submits the "court may not consider arguments about the parties' private interest.   [Because] [w]hen the parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. (referencing Omega Liner Co., Inc., 2019 WL 4415378, at *3). Stellar Restoration contends transfer to the venue designated by the forum-selection clause does "not carry with it the original venue's choice-of-laws—a factor that in some circumstances may affect the public interest considerations." Id. (referencing Omega Liner Co., Inc., 2019 WL 4415378, at *3).

Addressing the public interest factors, Stellar Restoration argues "there is no 'local interest' here that rises to the level of an 'extraordinary circumstance[,]'" because Mr. Smith is a citizen of South Dakota and Stellar Restoration is a citizen of Texas.   Id. at p. 10.   Because both states have "an interest in regulating and protecting its businesses," Stellar Restoration believes the local interest "does not show a compelling or extraordinary circumstance needed to overcome a forum selection clause."   Id.

As the parties' forum-selection clause provided "Texas law would govern the interpretation and construction of the Agreement[,]" Stellar Restoration submits "[t]he Texas court is undoubtedly 'at home' with Texas law."   Id.

7

Stellar Restoration argues "this factor weighs in favor of transferring this case to Texas."   <u>Id.</u>

Because "[n]one of the public interest factors demonstrate the type of 'unusual' circumstances needed to defeat the parties' forum selection clause[,]" Stellar Restoration concludes Mr. Smith "cannot meet 'the burden of showing that public-interest factors overwhelmingly' favor a proceeding in this Court." <u>Id.</u> at p. 11.   For these reasons, Stellar Restoration asks its motion to dismiss Mr. Smith's Complaint without prejudice "pursuant to the doctrine of *forum non conveniens*" be granted.   <u>Id.</u>

### MR. SMITH'S RESPONSE

Mr. Smith opposes Stellar Restoration's motion to dismiss.   (Docket 10). He argues dismissal is inappropriate because "[t]he South Dakota legislature passed deceptive trade practice legislation to protect consumers from [Stellar Restoration's] unfair conduct."   <u>Id.</u> at p. 4.   Mr. Smith submits "SDCL § 37-24-5.4 mandates that [s]ellers . . . provide the buyer . . . with a 'Notice of Cancellation' form in duplicate attached to the contract and easily detachable in ten point bold face type."   <u>Id.</u>   After appealing the Texas court's denial of his "jurisdictional objections," Mr. Smith submits his Complaint was filed "seeking damages for [Stellar Restoration's] violation of South Dakota's deceptive trade practices laws."   <u>Id.</u> at p. 5.

8

1.    FIRST-FILED RULE

Mr. Smith argues his "South Dakota federal lawsuit is not parallel with" Stellar Restoration's "Texas state court lawsuit," thus rending the first-filed rule inapplicable.   Id. (referencing Midwest Motor Express, Inc. v. Central States Southeast and Southwest Areas Pension Fund, 70 F.3d 1014, 1017 (8th Cir. 1995)).   Mr. Smith submits his Complaint "involve[s] . . . deceptive trade practice," while Stellar Restoration's Petition "involve[s] contract issues."   Id. at p. 9.   "Without an identity of issues," Mr. Smith asserts "the two cases are not parallel and therefore, not concurrent."   Id.

Mr. Smith contends the first-filed rule only applies when determining "which of two concurrent federal court actions should proceed to judgment."   Id. (referencing Smart v. Sunshine Potato Flakes, 307 F.3d 684, 687 (8th Cir. 2002)).   He submits "[t]he Smart court rejected the argument that the first-filed rule required the federal court to defer to the pending suit in state court."   Id. at p. 11.   "[B]ecause of the federal court's 'virtually unflagging obligation' to exercise its jurisdiction[,]" Mr. Smith argues "[t]his court's obligation to exercise jurisdiction far outweighs [Stellar Restoration's] status as first filer in a state court action[.]"   Id.

Mr. Smith submits "[o]ne of the 'two red flags' for compelling circumstances . . . is the filing of a lawsuit as a preemptive strike or race to the courthouse."   Id. (referencing Nw. Airlines, Inc., 989 F.2d at 1007).   He believes this red flag exists because one day after Stellar Restoration was e-mailed

9

Attorney LaFleur's letter expressing an intent to seek legal recourse over its violation of South Dakota's deceptive trade practices law, Stellar Restoration filed its lawsuit in the Texas state court.   Id.   Mr. Smith contends "[t]he first-filed rule should not control the federal court's jurisdiction determination under these circumstances."   Id.

Mr. Smith argues Stellar Restoration's bad faith and the balance of inconvenience to him "far outweighs any inconvenience to [Stellar Restoration], which chose to conduct business in South Dakota."   Id.   This, Mr. Smith concludes, "precludes the application of the first-filed rule to deny this court's exercise of jurisdiction over [his] deceptive trade practices claim."   Id.

2.   DOCTRINE OF *FORUM NON CONVENIENS*

Mr. Smith contends Stellar Restoration has the burden of persuasion that the doctrine justifies dismissal.   Id. at pp. 5-6 (referencing Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1389 (8th Cir. 1995)).   Mr. Smith submits the court must look at both the "private and public interests" when evaluating the doctrine of *forum non conveniens*.   Id. at p. 6 (referencing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947)). Without detailing those factors here, Mr. Smith concludes Stellar Restoration "did not meet its burden of showing that the public and private interest factors weigh decidedly in favor of either alternative as the more convenient venue for the present action.   As a consequence, Smith's chosen forum, South Dakota

10

should not be disturbed." Id. at p. 7 (referencing Reid-Whalen v. Hansen, 933 F.2d 1390, 1394 (8th Cir. 1991).

3.     ABSTENTION

Mr. Smith argues:

[T]he issues in Smith's claims involve Stellar's violation of South Dakota's deceptive trade practices law and the damages flowing from the violation.   Stellar's claim is a breach of contract claim and involve[s] issues of whether a valid contract existed, whether the contract is void, whether the contract is unconscionable or a contract of adhesion, examining the terms of the contract and damages.   The required identity of issues is lacking, hence the two actions are not parallel.

Id. at p. 8.   Mr. Smith submits "[s]ince the two actions are not parallel, the South Dakota Federal District Court need not search for exceptional circumstances to abstain from hearing the instant action." Id. at p. 9.   Instead, Mr. Smith contends "the federal court has an unflagging obligation to exercise the jurisdiction given to [it] and [the] Texas state court action that is not parallel with the instant lawsuit is not a basis to obviate the federal court's obligation to exercise jurisdiction in the instant action." Id.

**STELLAR RESTORATION'S REPLY**

1.     DISMISSAL IS APPROPRIATE

In reply, Stellar Restoration submits both "parties unambiguously agreed that this dispute would be litigated exclusively in Texas."   (Docket 12 at p. 2). In its view, "there is no dispute that the Agreement contains a choice of law clause designating Texas as the exclusive forum for any dispute." Id. (referencing Docket 6-1 at p. 3.).   Mr. Smith's argument "dismissal is

11

inappropriate under the doctrine of *forum non conveniens*," according to Stellar Restoration "wholly ignores the well-settled law that when a forum selection clause applies, the traditional balancing of private interests is altered and the burden shifts to the Plaintiff to challenge the forum selection clause's venue." Id. at p. 3 (referencing Omega Liner Co., Inc., 2019 WL 4415378, at *3) (citing Atlantic Marine Const. Co., Inc., 571 U.S. at 63).   Because Mr. Smith is relying on his "inapplicable *private* interests for litigating in South Dakota[,]" Stellar Restoration argues "he fails to meet his burden showing that the *public* interests outweigh enforcing the forum selection clause."   Id. at p. 4 (emphasis in original) (referencing Servewell Plumbing, LLC v. Federal Ins. Co., 439 F.3d 786, 790 (8th Cir. 2006); other reference omitted).

While Stellar Restoration acknowledges the first two public interests are neutral, it submits the "Texas courts are undoubtedly at 'home' with this case because Texas law controls."   Id. (referencing Docket 6-1 at p. 3).   Stellar Restoration contends Mr. Smith's claimed "lack of knowledge" of either the "forum selection clause or choice-of-law clause . . . are militated by the conspicuous heading [8. GOVERNING LAW/JURY WAIVER (bold omitted)] and [his] signature below this very provision."   Id. at pp. 5-6.

2.    FIRST-FILED RULE

In response to Mr. Smith's argument that the "first-filed rule should not apply because the Texas Action is a state action, rather than a federal action[,]" Stellar Restoration submits "[t]he Eighth Circuit has yet to explicitly rule on the

application of the first-filed rule when concurrent cases exist in federal and state court; rather, the Eighth Circuit has merely said it would be less apt to apply the rule in such circumstances."   Id. at p. 6 (referencing Smart, 307 F.3d at 687). Stellar Restoration contends "[j]udicial comity would best be served by applying the first-filed rule in this case."   Id. at p. 7.   "In analyzing parallelism," Stellar Restoration argues there need not be "a precise identity of issues, but, rather, [the] Court should focus its inquiry on whether there is a danger of inconsistent results and a duplication of judicial proceedings."   Id. at p. 8 (citing The Weitz Co., LLC, v. Travelers Casualty & Surety Company of America, No. 4:02-CV-40188, 2002 WL 31371969, at *5 (S.D. Iowa Oct. 18, 2002)).

Urging a finding of parallelism, Stellar Restoration submits the following factors exist.

> First, the Texas Action and this Action arise out of the *same* Agreement, not separate agreements.   Indeed, all issues in the Texas Action and this Action delineate from the same Agreement. Second, complete relief is available for [Mr. Smith] in Texas as his claims are wholly interrelated to the pending Texas Action.   Finally, both Stellar Restoration and [Mr. Smith] are seeking the same relief in the form of monetary damages.

Id. at pp. 10-11.   For these reasons, Stellar Restoration urges the court to "apply the first-filed rule."   Id. at p. 11.   "[I]n light of [Mr. Smith's] appeal challenging personal jurisdiction in Texas," Stellar Restoration offers "this Court might exercise its discretion to stay this Action until personal jurisdiction has been resolved in the Texas Action."   Id. at p. 13.

## ANALYSIS

Stellar Restoration's arguments presume the Agreement and thus the forum-selection provision of the Agreement are valid.   See Docket 5 at p. 4.   Mr. Smith's argument undercuts Stellar Restoration's position as he asserts the forum-selection provision is not valid because the entire Agreement violates South Dakota deceptive trade practices law.

Stellar Restoration acknowledges 28 U.S.C. § 1332 is the proper jurisdiction statute applicable to this case as the notice of removal admits the Complaint "alleges damages exceeding $75,000 between citizens of different states."   (Docket 1 at p. 1).   A federal court has a " 'virtually unflagging obligation' to exercise its jurisdiction."   Smart, 307 F.3d at 687 (citing Colorado River Water Conservation District v. United States, 424 U.S. 800, 817-18 (1976)).

"Issues of contract interpretation are considered 'quintessentially substantive,' rather than procedural under Erie.[1] . . . [A]s a general rule in diversity cases, [a federal] court[] should apply state contract law to decide interpretation questions."   Omega Liner Co. Inc., 2019 WL 4415378, *5 (citing M. Collins v. Mary Kay, Inc., 874 F.3d 176, 182 (3d Cir. 2017)).

In this case, it is undisputed the Agreement was executed in South Dakota.   (Dockets 1-1 ¶ 8 & 6-2 ¶ VII).   "[P]arties to a contract may effectively agree to be bound by the law of a particular state, but such governing law agreements are subject to limitation and invalidation by the overriding public

---

[1]Erie Railroad v. Thompkins, 304 U.S. 64 (U.S. 1938).

14

policy of the forum state." State ex rel. Meierhenry v. Spiegel, Inc., 277 N.W.2d 298, 299 (S.D. 1979).   "[P]ublic policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good." Id. at 300 (citing Bartron v. Codington County, 2 N.W.2d 337, 343 (S.D. 1942)).   "The primary sources for declarations of the South Dakota public policy . . . are the constitution, statutory law and judicial decisions." Id.   In State ex rel. Meierhenry, the South Dakota Supreme Court explained the importance of public policy:

> The rationale behind the public policy limitation on the enforcement of governing law agreements is that freedom of contract is not an absolute right or superior to the general welfare of the public.   It is subject to reasonable restraint and regulation by the state, under the police power, to protect the safety, health, morals, and general welfare of the people.

Id. (internal quotation marks and citations omitted).

Mr. Smith alleges the Agreement is invalid for violating SDCL Chap. 37-24.   See Dockets 1-1 at p. 3 ¶ 18 & 10 at p. 1.   South Dakota law provides:

> It is a deceptive act or practice, within the meaning of § 37-24-6, for any seller, in connection with any door to door sale, to:
>
> (1)   Fail to furnish each buyer, at the time the buyer signs the door to door sales contract or otherwise agrees to buy . . . services from the seller, a completed form in duplicate, captioned "NOTICE OF CANCELLATION," which shall be attached to the contract or receipt and easily detachable, and which shall contain in ten point bold face type . . . .
>
> (2)   Fail, before furnishing copies of the notice of cancellation to the buyer, to complete both copies by entering the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third

15

>       business day following the date of transaction, by which the
>       buyer may give notice of cancellation.

SDCL § 37-24-5.4.   Section 37-24-6 in part declares:

>   (1)     It is a deceptive act or practice for any person to . . .
>           [k]nowingly act, use, or employ any deceptive act or practice,
>           fraud, false pretense, false promises, or misrepresentation or
>           to conceal, suppress, or omit any material fact in connection
>           with the sale or advertisement of any merchandise, regardless
>           of whether any person has in fact been misled, deceived, or
>           damaged thereby . . . .

SDCL § 37-24-6.   While "merchandise" is used in § 37-24-6, "merchandise" is

defined to include "service."   See SDCL § 37-24-1(7).

Strict compliance "with the precise terms of" SDCL §§ 35-24-5.3 & 5.4 is

mandatory.   State v. Western Capital Corp., 290 N.W.2d 467, 469 (S.D. 1980).

In other words, the contract "must substantially conform to the cancellation

provision" appearing in §§ 37-24-5.3 & 37-24-5.4.   Id. at 469-70.   "The fact

that the statute[s] provide[] for boldface, ten-point type evidences an intent that

the notice contain a certain emphasis or prominence."   Id. at 470.   So

important is the public policy of South Dakota stated through these provisions

that the statute "allows the court to make such additional orders 'as may be

necessary to restore to any person in interest any moneys . . . the court finds to

have been acquired by means of any act or practice declared to be unlawful by

Section 37-24-6[.]'"   Id. at 471 (referencing SDCL § 37-24-29).   SDCL

§ 37-24-27 further permits "the attorney general, upon petition to the court" to

"recover, on behalf of the state, a civil penalty of not more than two thousand

dollars per violation."   Western Capital Corp., 290 N.W.2d at 473 (emphasis

16

omitted).   "[I]t is not necessary that the State show actual damages suffered in order to recover under the section."   Id.   Finally, "[a]ny person who claims to have been adversely affected by any act or practice declared to be unlawful by § 37-24-6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice."   SDCL § 37-24-31.

SDCL Chap. 37-24 is a clear "legislative expression of the public policy of South Dakota."   State ex rel. Meierhenry, 277 N.W.2d at 300.   Western Capital Corp., "is also a strong judicial expression of this public policy."   Id.   The purpose of the South Dakota Deceptive Trade Practices Act "is to protect the general welfare of South Dakota citizens" from the high pressure, aggressive sales-pitch activities of door-to-door salesmen, without a three-day cooling off period during which the buyer is entitled to cancel the contract.   Id.

The court concludes SDCL Chap. 37-24 constitutes strong public policy. The question then becomes whether the federal court should defer to the Texas state court to protect and enforce South Dakota's strong public policy?

1.   THE FIRST-FILED RULE

"To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction."   Nw. Airlines, Inc., 989 F.2d at 1006.   "The rule, however, yields to the interests of justice, and will not be applied where a court finds 'compelling circumstances' supporting its abrogation."   Id.

17

When considering the first-filed rule between the filings in a federal district court and a state court, the Eighth Circuit observed:

> [W]hen the issue is whether a federal court should defer to a pending suit in state court, . . . the order in which jurisdiction was obtained, while still a relevant factor in applying the abstention doctrine, is far less apt to be determinative because of the federal court's "virtually unflagging obligation" to exercise its jurisdiction.

Smart, 307 F.3d at 687 (citing Colorado River Water Conservation District, 424 U.S. at 817–18; referencing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 21–23 (1983)).

In Nw. Airlines, Inc., the court considered two "red flags" which may constitute "compelling circumstances." Nw. Airlines, Inc., 989 F.2d at 1007. "First, Northwest was on notice that American was at least considering filing suit against Northwest. American's letter, however, gave no indication that a lawsuit was imminent, or that American was doing anything more than blowing smoke about a potential lawsuit." Id. Second, "[t]he fact that Northwest's action was for declaratory judgment also merits a closer look, as such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief." Id.

The district court found, and the appellate court approved, "that Northwest, in filing first, had neither acted in bad faith nor raced to the courthouse to preempt a suit by American in Texas." Id. Additionally, the court acknowledged "neither party is asserting claims in one forum that are not

also asserted in the other." Id.   The Court of Appeals for the Eighth Circuit

concluded:

> We have no doubt that the District Court will be fair and impartial.
> Having carefully reviewed the record, we hold that the District Court
> did not abuse its discretion in its application of the first-filed rule
> and in enjoining American from proceeding further with its action
> against Northwest in Texas.   The spectre of duplicative efforts and
> costs and of inconvenience to the parties, together with the waste of
> judicial resources inherent in parallel litigation, all provide support
> for the District Court's decision.

Id.

In Midwest Motor Express, Inc., the court affirmed the district court's

decision to reject plaintiff's claimed "compelling circumstances" and approved

transfer of the case to the Northern District of Illinois.   Midwest Motor Express,

Inc., 70 F.3d at 1017.   The court considered, but rejected, Midwest Motor

Express' argument "that Central States' claims were premature when filed." Id.

The court concluded "if the claims are legally infirm, we trust the Illinois court to

dismiss them." Id.   Secondly, the court rejected Midwest Motor Express' claim

that "Central States' complaint contained false statements of fact, and that this

constitutes a compelling circumstance for ignoring the first-filed rule." Id.   The

court again concluded "[i]f these alleged misstatements indeed exist, Midwest

may move for sanctions in the Illinois court." Id.   In dicta, the Eighth Circuit

suggested it "might have been more favorably inclined to Midwest if it had

produced evidence that Central States promised or indicated in some manner

that it would not sue, that Midwest relied on this representation, and that

Central States then filed a surprise complaint[.]" Id.

19

In <u>Smart</u>, the Eighth Circuit determined it "need not consider how to apply the abstention doctrine when one party to an arbitration moves to vacate the award in state court, and the other party then files a motion to confirm the award under the Federal Arbitration Act in federal court."   <u>Smart</u>, 307 F.3d at 687. Additionally, "Smart's state court action was not the first-filed.   This action in federal court—initially filed by Smart—was first-filed[.]"   <u>Id.</u>   Because the North Dakota District Court initially stayed its action pending arbitration in New Mexico under the parties' contract, the North Dakota District Court subsequently had "the further power to confirm any ensuing arbitration award." <u>Id.</u> at 685.   "[N]o duplication of judicial effort occurred when the district court proceeded to exercise its continuing jurisdiction[.]"   <u>Id.</u> at 687.

On September 8, 2020, Mr. Smith received the August 31 letter from Attorney Suster.   (Docket 11-1 at p. 2 ¶13) (referencing <u>id.</u> at pp. 4-6).   After setting out his interpretation of Mr. Smith's obligations under the Agreement, Attorney Suster declared "demand is hereby made upon you to make payment in the amount of $109,743.75 . . . . Unless funds are tendered to this office on or before 5:00 p.m. Tuesday, September 8, 2020, I will advise my client to file suit against you for damages."   <u>Id.</u> at p. 5 (bold and underlining omitted).

Stellar Restoration claims it "did not have notice of [Mr. Smith's] intention to sue prior to filing the Texas Action[.]"   (Docket 5 at p. 7).   This assertion is contrary to the undisputed documentary evidence presented.   On September 10, 2020, Attorney LaFleur e-mailed a response to Attorney Suster's demand.

(Dockets 10 at pp. 3-4 & 11-2).   After identifying the absence of a "notice of cancelation" mandated by "SDCL § 37-24-5.3 and 37-24-5.4[,]" Attorney LaFleur asked Attorney Suster:

> Please confirm in writing that you will be withdrawing any claim made by Stellar Restoration . . . within 10 days from your receipt of this letter, <u>otherwise Mr. Smith will be left with no alternative than to seek the legal recourse available to him to establish the deceptive trade practice and his right to cancel or rescind the alleged contract</u>.

(Docket 11-2) (emphasis added).   Attorney LaFleur encouraged Attorney Suster to consider the content of the letter and that Attorney LaFleur would "await your response." <u>Id.</u>   Rather than communicate with Attorney LaFleur, Stellar Restoration filed its Petition in Texas state court the very next day, on September 11, 2020.   (Docket 6 ¶ 4).

Attorney Suster's letter to Mr. Smith "gave no indication that a lawsuit was imminent or that [Stellar Restoration] was doing anything more than blowing smoke about a potential lawsuit." <u>Nw. Airlines, Inc.</u>, 989 F.2d at 1007.   An attorney's advice to file a lawsuit is merely that, advice.   Attorney LaFleur's letter put Stellar Restorations on notice the Agreement may be void for violating South Dakota law.   It is clear Stellar Restoration was intent on pulling the trigger and filing in Texas state court without discussing the validity of the Agreement further with Attorney LaFleur.   Stellar Restoration "raced to the courthouse to preempt a suit by" Mr. Smith in South Dakota.   <u>Id.</u>   This action is "indicative of a preemptive strike."   <u>Id.</u>

21

Mr. Smith was served with the Petition on September 17, 2020.   (Docket 11-1 at p. 2 ¶ 14).   Mr. Smith's Texas attorney filed an Answer to the Petition on October 1, 2020.   (Dockets 6 ¶ 5 & 6-3).   Among other things, the Answer asserted the Agreement was "void because [Stellar Restoration] did not provide [Mr. Smith] notice of cancellation[,]" and the Texas state court did "not have personal jurisdiction . . . because [Mr. Smith] is a resident of South Dakota, not Texas[,] [and] [t]he [Agreement] . . . is void and . . . all pertinent transactions occurred exclusively in the State of Dakota [sic]."   (Docket 6-3 ¶¶ 2 & 5).   After the Texas state court denied Mr. Smith's "jurisdictional objections" and while "an appeal to the order denying [his] motion to dismiss on jurisdictional grounds" was pending, Mr. Smith filed his lawsuit on December 8, 2020, in South Dakota state court seeking judgment against Stellar Restoration.   (Dockets 1-1 at pp. 2-4 & 10 at p. 5).

Were this federal court to retain jurisdiction over the issue of validity of the Agreement, "no duplication of judicial effort" will necessarily occur because the validity of the Agreement is at the core of the validity of Stellar Restoration's forum provision and its claims for money damages and attorney's fees.   Smart, 307 F.3d at 687.   If this court retains jurisdiction, it is confident the Texas state court will stay further litigation on Stellar Restoration's claims for breach of contract and money damages pending a decision by this court applying South Dakota law as to the validity of the Agreement.

22

The court finds there are compelling circumstances to not apply the first-filed rule.

2.    THE DOCTRINE OF *FORUM NON CONVENIENS*

"[I]n ruling on a motion to dismiss based on forum non conveniens, [the district court] must 'balance the preference accorded plaintiff's choice of forum with the burdens of litigating at an inconvenient venue.'" Reid-Walen, 933 F.2d at 1393.   To conduct the analysis, the court should "consider[] the private and public interest factors first enunciated by the Supreme Court in . . . Gilbert, 330 U.S. . . . [at] 508–09 . . . . These factors are applied in all forum non conveniens cases." Id. (referencing Mizokami Brothers of Arizona v. Mobay Chemical Corp., 660 F.2d 712, 717-18 (8th Cir. 1981)).   "The defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on forum non conveniens." Id.   "Trial courts have broad discretion in deciding a motion to dismiss based on forum non conveniens, and when the district court 'has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'" Id. at 1393-94 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981)).   "A trial court's decision to dismiss on the ground of forum non conveniens will be overturned only for abuse of discretion." Id. at 1394.   "[E]mphasis on the district court's discretion . . . must not overshadow the central principle of the Gilbert doctrine that 'unless the balance is strongly in

favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' "  Id. at 1394.

>In Gilbert, private factors to be considered are summarized as follows:
>
>The private interest of the plaintiff;
>
>The relative ease of access to sources of proof;
>
>The availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses;
>
>The possibility of view of premises if a viewing is appropriate to the action;
>
>The enforceability of a judgment if one is obtained;
>
>The relative advantages and obstacles to fair trial; and
>
>All other practical problems that interfere with making trial easy, expeditious and inexpensive.   Id.

Gilbert, 330 U.S. at 508.   The public interest facts identified by Gilbert are summarized as follows:

>Administrative problems generated when litigation is stacked up in congested courts as opposed to the court of origin;
>
>Jury duty should not be a burden imposed on people of a community having no relation to the litigation;
>
>Where the issue of the case may touch the affairs of several people, the trial should be held where they are able to view it, as opposed to a remote court where they only learn of the decision by written ruling;
>
>There is an interest in having localized controversies decided at home;
>
>There is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case,

24

> rather than having a court in some other forum untangle problems
> in conflict of laws and in law foreign to itself.

Id. at 508-09.   The court separately analyzes each of the private interest and public interest factors.

PRIVATE INTEREST FACTORS

A.   Residence Of The Parties And Deference To Plaintiff's Forum
Choice

Mr. Smith is a resident of South Dakota and Stellar Restoration is a resident of Texas.   Personal jurisdiction in a diversity case exists "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause."   Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004).

South Dakota's long-arm statute establishes personal jurisdiction for individuals and companies "entering into a contract for materials to be furnished in this state."   SDCL § 15-7-2(5); see also SDCL §§ 15-7-2(1), (10) & (14).   The Eighth Circuit recognizes South Dakota's long-arm statute is applied to the fullest extent permitted by the Due Process Clause.   Bell Paper Box v. Trans Western Polymers, Inc., 53 F.3d 920, 921 (8th Cir. 1995).   The contacts with the forum state, South Dakota, are sufficient if the nonresident defendant has fair warning of being hauled into court here, because it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."   Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Two theories exist for evaluating assertions of personal jurisdiction: general and specific.   Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008) (referencing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).   General jurisdiction is appropriate when the nonresident defendant maintains a "continuous and systemic, even if limited, part of its business" within the forum state, so long as these contacts are not " 'random,' 'fortuitous,' or 'attenuated.' " Steinbuch, 518 F.3d at 586 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 & 79 (1984)).   Specific jurisdiction is appropriate where a nonresident defendant has not consented to suit but "has 'purposefully directed' [its] activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) (internal citations omitted).   Based even on the brief summary of facts articulated earlier in this order, the court concludes it has both general and specific jurisdiction over Stellar Restoration.

Mr. Smith chose to file his complaint against Stellar Restoration in the South Dakota state court.   Stellar Restoration then chose to remove the case to the Western Division of the District of South Dakota.   Both parties must recognize this federal court has diversity jurisdiction over Mr. Smith's claims. 28 U.S.C. § 1331.   The court "must give deference to a plaintiff's forum choice." Reid-Walen, 933 F.2d at 1394.   "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Id. at

1394-95 (citing <u>Gilbert</u>, 330 U.S. at 508).   "Although such choice is not to be given dispositive weight, jurisdiction should be declined only in 'exceptional circumstances.' "   <u>Id.</u> (citing <u>Gilbert</u>, 330 U.S. at 504).

Both factors favor the court not dismissing or staying Mr. Smith's Complaint under the doctrine of *forum non conveniens*.

B.    <u>Location Of Key Witnesses And Subpoena Power Of The Court</u>

The only witnesses necessary to permit the court to determine the validity of the Agreement would appear to be Mr. Smith and Mr. Jebbens.   In fact, whether the Agreement comports with South Dakota deceptive trade practices law may not even require the testimony of either witness, since Stellar Restorations admits the existence of the document under challenge by Mr. Smith.   <u>See</u> Dockets 6 ¶ 3 & 6-1.   If Stellar Restorations believes Mr. Jebbens has valuable testimony to offer on the validity question, it is certainly able to bring its own employee to court or subpoena his presence for hearing, if he is residing in South Dakota or by deposition, if he is residing in Texas.

These factors favor the court not dismissing or staying Mr. Smith's Complaint under the doctrine of *forum non conveniens*.

C.   <u>Access To Evidence And Viewing The Premises</u>

Stellar Restoration does not suggest any evidence material to its defense of the validity of the Agreement cannot be produced in the District of South Dakota. If a viewing of Mr. Smith's property is relevant to a determination of the validity of

the Agreement, the property is situated in Pennington County, South Dakota, and readily accessible to the court.

These factors favor the court not dismissing or staying Mr. Smith's Complaint under the doctrine of *forum non convenions*.

D.     Enforcement Of A Judgment

Enforcement of the court's judgment as to the validity of the Agreement and plaintiff's money damages, if those are the ultimate rulings of the court, can certainly occur in the State of Texas, the company headquarters of Stellar Restoration.   See 28 U.S.C. § 1963 ("Registration of judgments for enforcement in other districts").

This factor favors the court not dismissing or staying Mr. Smith's Complaint under the doctrine of *forum non convenions*.

E.     The Relative Advantages And Obstacles To A Fair Trial

Stellar Restoration identifies no obstacles to obtaining a fair trial in the District of South Dakota.   It argues the Texas state court could interpret South Dakota law if needed under Texas' application of the choice-of-laws doctrine. But Stellar Restoration does not acknowledge that the validity of the Agreement should be determined under South Dakota law.   See Dockets 5 & 12.

This factor favors the court not dismissing or staying Mr. Smith's Complaint under the doctrine of *forum non convenions*.

28

F.     Other Practical Problems That Interfere With Making Trial
       Easy, Expeditious And Inexpensive

The court sees no practical problems which would interfere with making a trial of Mr. Smith's case easy, expeditious and inexpensive.   As mentioned above, the court perceives the validity of the Agreement will be resolved by declaratory judgment.

This factor favors the court not dismissing or staying Mr. Smith's Complaint under the doctrine of *forum non conveniens*.

PUBLIC INTEREST FACTORS

A.     Administrative Problems

One of the public interest factors is the court congestion which may be caused if a case is heard in a distant court as opposed to the court where the complaint is filed.   Gilbert, 330 U.S. at 508.   There is no evidence of court congestion in either the Texas state court or this federal court which would interfere with the parties' prompt resolution of the case.

This factor is neutral in the court's consideration of the doctrine of *forum non conveniens*.

B.     Jury Duty

If Mr. Smith's deceptive trade practices act complaint is heard in the Texas state court, a jury in that proceeding would have no relationship to his South Dakota statutory violation allegations.

This factor favors the court not dismissing or staying Mr. Smith's Complaint under the doctrine of *forum non conveniens*.

29

C.    Interest Of The Forum In The Dispute

Where the issue of the case may touch the affairs of several people, the trial should be held where they are able to view it, as opposed to a remote court where they only learn of the decision by written ruling.   Gilbert, 330 U.S. at 509. Mr. Smith's complaint alleges Stellar Restoration violated South Dakota law.   It is not clear whether Stellar Restoration employees or agents engaged in door-to-door solicitations with other residents of Pennington County, South Dakota at the same time as its interaction with Mr. Smith.   Even without that information, Mr. Smith's claim would be of interest to the citizens and communities of the Western Division of the District of South Dakota as the statutory framework governing door-to-door solicitations and the issue of deceptive trade practices is enshrined in South Dakota law.

This factor favors the court not dismissing or staying Mr. Smith's Complaint under the doctrine of *forum non convenions.*

D.    Interest In Having Localized Controversies Decided At Home

Like the factor focusing on the interest of the forum state in the issue in dispute, this Gilbert public interest factor reminds the district court that there is an interest in having a conflict of a local nature decided in the forum state where the controversy arose.

Stellar Restoration's only justification for trial in Texas is that the Agreement set Texas state court as the forum chosen in the forum selection provision for resolving contractual disputes.   Stellar Restoration chose not to

30

argue which state's law should be applied in determining whether the Agreement is a valid contract.   The dispute is an important issue to South Dakotans and is a controversy which should be decided by a South Dakota court, whether a state court or a federal district court as chosen by Stellar Restoration through its notice of removal.

This factor favors the court not dismissing or staying Mr. Smith's Complaint under the doctrine of *forum non conveniens*.

### E.   Diversity Case In The Forum In Which The State Law Would Govern

"[T]he task of the trial court would be simplified by a trial in" South Dakota.   Gilbert, 330 U.S. at 511.   "If trial was in a state court [in South Dakota], it could apply its own law to events occurring there.   If in federal court by reason of diversity of citizenship, the court would apply the law of its own state in which it is likely to be experienced.   The course of adjudication in [Texas state court] might be beset with conflict of laws problems all avoided if the case is litigated in [South Dakota] where it arose."   Gilbert, 330 U.S. at 512.

This factor favors the court not dismissing or staying Mr. Smith's Complaint under the doctrine of *forum non conveniens*.

The court concludes Stellar Restoration failed "to produce adequate factual proof necessary to carry [its] burden of persuasion on [all but one] of the private and public interest factors."   Reid-Walen, 933 F.2d at 1401.   "[U]nless the balance is strongly in favor of [Stellar Restoration], [Mr. Smith's] choice of forum should rarely be disturbed."   Gilbert, 330 U.S. at 508.   "[T]he

31

overwhelming weight of the factors point toward [South Dakota] as the most convenient forum."  <u>Reid-Walen</u>, 933 F.2d at 1401.

## ORDER

Based on the above analysis, it is

ORDERED that Stellar Restoration's motion to dismiss (Docket 4) is denied.

IT IS FURTHER ORDERED that on or before **October 7, 2021**, Stellar Restoration shall file a copy of this order in the case of <u>Stellar Restoration Services, Inc. v. Kim Smith</u>, District Court, 429th Judicial District, Collin County, Texas, No. 429-044465-2020.

IT IS FURTHER ORDERED that Stellar Restoration shall file its answer to plaintiff's complaint on or before **October 18, 2021**.

Dated September 27, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE